## FERRY *v.* WILSON.

*(City Court of New York, General Term.* December 17, 1891.)

CONTRACT FOR ADVERTISEMENT—PERFORMANCE—EVIDENCE.

> Plaintiff offered to insert an advertisement for defendant in 10 magazines, for the month of October, 1888, for $35. Defendant accepted; and added that if plaintiff would make a rebate for six monthly insertions the advertisement might continue till April, (inclusive.) Plaintiff replied, offering insertions for six months for $16, ($168,) which offer defendant accepted; after which plaintiff wrote: "I am in receipt of your favor of the 5th, accepting my offer for six months' advertising. I inclose contract for same; * * * also contract for advertisement in October issues, as per your order of October 1st last." The two contracts were respectively for the sums of $168 and $35, and did not appear ever to have been signed or returned. On November 28th plaintiff sent a bill for $35, advertising for October. The advertisement was published for six months only, beginning with October. *Held,* that a separate contract for October was first entered into at $35, and that plaintiff could not eke out the six-months' publication, afterwards contracted for, by including therein the October publication.

Appeal from trial term.

Action by Samuel P. Ferry against James G. Wilson. From a verdict and judgment for plaintiff, defendant appeals. Reversed.

Argued before VAN WYCK, FITZSIMONS, and McCARTHY, JJ.

*Francis Forbes,* for appellant. *Robinson, Bright, Biddle & Ward,* for respondent.

VAN WYCK, J. The complaint alleges "that between the months of October, 1888, and March, 1889, both inclusive," the plaintiff published, in 10 specified magazines, an advertisement for defendant, for which he agreed to pay $168. The answer as amended alleges that the agreement was that such advertisement should be so published in such magazines "for the term of six months, from and including November 1, 1888," for the agreed sum of $168, and denies that plaintiff did so publish said advertisement as he agreed to do. The only witness called on behalf of the plaintiff testified that no negotiations were had with the defendant about publishing his advertisements, except by letter; and so plaintiff's case rests on certain written exhibits, except as to the proof of publication, and as to that plaintiff makes no proof that the advertisement was published in the magazines for April, 1889, which is the last month of the six-months term during which the defendant alleges that the advertisement was to be published. In order to intelligently consider this appeal, it will be necessary to quote quite freely from the letters marked in evidence. The first is from plaintiff to defendant, and is dated September 29, 1888, saying: "We will insert this advertisement in all of the journals on inclosed list for October, giving you a quarter page, for $35." The defendant's reply, dated October 1, 1888, says: "I have yours of 29th ult. at hand. I accept your offer to insert my ad. in your list of 10 mags. for $35, to occupy ¼ page. If you will give me a good position, and make a rebate for 6 insertions in the monthlies and 2 in the quarterlies, I may continue till April." Upon receipt of this letter the minds of plaintiff and defendant met as to the insertion of the advertisement in the magazines for October, and a contract then attached by which the plaintiff was legally bound to so publish such advertisement in said magazines for October, and the defendant was lawfully obligated to pay the $35 immediately upon such publication being made. That plaintiff duly received this letter is evidenced by this reply to defendant: "October 2, 1888. I am in receipt of your favor of the 1st, and the accompanying order, and thank you for the same. I can give you the top of a white advertising page for six months for both quarterlies and monthlies, 48 insertions in all, for $16, payable January 1st, 1889." The first sentence of this letter shows that plaintiff was very careful that there should be no misunderstanding about the existence of a binding contract as to the adver-

tisement in the magazines for October, and clearly indicates that he desired to be understood as considering the second sentence of defendant's letter of October 1st as an acceptance of the offer contained in plaintiff's letter of September 29th to insert the advertisement in the magazines for October, and as separate and distinct from any other propositions contained in defendant's letter of October 1st, for the second sentence of this letter is construed by him in his letter of October 2d as "the accompanying order," for which he thanks defendant.   The next letter is from defendant to plaintiff:   "October 3, 1888.   I have your favor of yesterday, but your estimate is not perfectly plain to me.   *   *   *   Do you mean $161?"   To this plaintiff replied: "October 4, 1888.   I have your favor of the 3d.   My previous letter should have read, '48 insertions for $168,'" and to which defendant replied:   "October 5, 1888.   I accept your offer, provided you place my ad. on top pages in all cases, and send me copy of the books each issue."   As there was a separate and distinct contract between the parties for the insertion of the advertisement in the 10 specified magazines for October, 1888, for $35; and, as they were only published once a month, it was clearly the intent and meaning of the parties that, for the additional gross sum of $168, the plaintiff was to insert the advertisement in the magazines for the further term of six months, beginning in the publications of the magazines for November, following the month already provided for at the gross sum of $35.   That such was the meaning and intent of the parties is further shown by defendant's Exhibits 1, 2, and 4.   Exhibit 4 is a letter from plaintiff to defendant, dated October 5, 1888, in which he says:   "I am in receipt of your favor of the 5th, accepting my offer for six months' advertising.   I inclose contract for same, which you will kindly sign and return.   I also inclose contract for advertisement in October issues, as per your order of October 1st."   The contracts inclosed in this letter are Exhibits 1 and 2.   Number one is addressed to plaintiff, and reads:   "I hereby authorize the insertion of my advertisement in the Nineteenth Century, to occupy the space of one-quarter page, from Nov., '88;" and then follow the names of the other nine magazines, and continues:   "For the term of six months, six times in monthlies, twice in quarterlies; for which I agree to pay the sum of one hundred and sixty-eight dollars.   Terms payable in cash, January 1, 1889."   And No. 2 is similarly addressed, and reads:   "I hereby authorize the insertion of my advertisement in the Nineteenth Century, to occupy the space of $\frac{1}{4}$ page;" and then follow the names of the other nine magazines; after which it continues:   "For the October issues, for which I agree to pay thirty-five dollars. Terms payable on receipt of all journals containing adv."   Although these two contracts were sent by plaintiff to defendant for his signature, it nowhere appears in evidence that they were executed.

Remembering plaintiff's letter of October 2d, offering to insert the advertisement for six months, for a price "payable January 1, 1889," and the contract, Exhibit No. 1, which says, "Terms payable in cash, January 1, 1889," it becomes material to refer to defendant's Exhibit No. 3, which reads: "Nov. 27, 1888.   J. G. Wilson, dr. to Leonard Scott Publication Co., [name under which plaintiff traded:]   For advertising $\frac{1}{4}$ page in Nineteenth Century for month of Oct., '88;" and then follow the names of the nine other magazines, and continues:   "$35.   Please remit."   The presentation of this bill to defendant on November 27th, with the request to "Please remit," clearly indicated that plaintiff then considered that he had two separate and distinct contracts with the defendant,—one to publish his advertisement for the month of October, for which the payment of $35 was then due; and the other to publish for six months, beginning with November, but under which no payment would become due until January following.   This was the condition of the case when plaintiff rested, and defendant moved for a nonsuit; for all of these exhibits of defendant were offered and received in evidence

while plaintiff's only witness was under cross-examination, and the subsequent proceedings did not better plaintiff's case. This second contract, to publish for six months in ten journals, for an agreed gross sum of $168, was entire and indivisible; and plaintiff was required to perform the same in its entirety, by publishing the advertisement, as agreed, for the full term of six months, beginning with and including November, 1889; and this he did not do, for the proof shows that the same was published for only five months of the term, and he makes no excuse for his failure to publish for the last month of the term. The only reason, which can be inferred from the record, for plaintiff's failure to complete the publication is that he was fearful of his pay; but, if defendant had defaulted in making payment at the time agreed upon, the plaintiff should have either discontinued the publication, and sued for what work he had already performed under the contract, and for such damages as he had sustained by reason of the breach thereof, or completed the publication as agreed, and brought his action on the contract. But he has done neither, for he brings his action on an alleged contract which his proof not only fails to establish, but shows that another and different contract existed, which his proof further shows has not been substantially performed by him; as it cannot be said that publication for five-sixths of an agreed term is any more a substantial performance of the contract than would be publication for the full term in five-sixths of the designated magazines. In *Dauchy* v. *Tutt*, 19 Wkly. Dig. 490, it is said: "The advertisements were not inserted within the stipulated time, and in the full number of papers, nor published the full agreed time in a great many of the papers,—nearly five-sixths of the papers published short time;" and held that the plaintiff could not recover. And Judge VAN BRUNT says, in *Hazzard* v. *Hoxsie*, (Sup.) 6 N. Y. Supp. 295, that a contract to publish an advertisement in the programmes used at three designated theaters is not substantially performed by publication in the programmes used at two of such theaters. It would seem that justice requires that upon the whole case the judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event; and it is so ordered. All concur.